The case just starting to be submitted will go then to Deane v. Plumas County. Good morning, Your Honor. My name is Michael Bush. I'm here on behalf of a welfare mom who was under an 18-month investigation for alleged welfare fraud. The investigation led to a notice of action from the welfare department, which then led to a fair hearing. At the fair hearing, Ms. Deane was able to demonstrate that even though she had acquired funds and had not reported income, it was basically because she was living in an extremely horrific, abusive relationship. She was afraid to report the funds. She was threatened about it. The district court even recognized that she was subjected to gruesome incidents in her relationship. As a result of that presentation of evidence, the hearing officer determined that, yes, even though there was an overpayment, this particular person would not be held to be blamed for it because she didn't have the ability. She wasn't able to report the income. I thought there was about $2,500 left. That was exactly my question. Yeah. It starts off like this. It's fairly complicated. It starts off with a $12,000 overpayment, which is the amount of income that was not reported. But you're allowed, when you have income, to have disregards counted against the income. That kind of reduced the income. For which you were excused because there was adequate reason not to report it. Well, exactly. That's exactly the point. And some of it was left over, apparently, $2,500. $2,500 of it is left over, which the family paid back. So she was guilty of that. No, that's not true. Explain it to me. Okay. You can be on welfare and you can receive funds that you're not supposed to receive for a variety of reasons. The welfare department could make a mistake in their calculations and you get the funds. You could report something that you thought was supposed to be reported or not reported. And as a result, the calculation results in you getting funds. Or you can engage in deception and obtain funds. In the cases where you are not engaging in willful deception, you still have to pay it back. Even if the welfare department is the one who made the error and you got overpaid, you still have to pay it back. But how you get to the amount that you pay back is a critical point in this particular case. Which defendants are presently before us? Deanne Dean. No, no, no. Oh, no. Linda Patton. The people you sued. Just describe them by title. Linda Patton is a welfare fraud investigator. Elliot Smart is the director of the Plumas County Welfare Department. Those are the two. Those are the two. And through. Prosecutor is not part of this. Never was because presumably because of immunity. Plus, he just is not part of it. I mean, he really didn't do it. It's against the woman who investigated these allegations. Right. Correct. And her supervisor who approved the submission to prosecutive authorities. Correct. It's not against the police officers who arrested her, her jailers or the people who made the prosecutor decision. No. Do I understand correctly that the welfare fraud investigator attached to one or both of her affidavits, the findings of the administrative law judge and the result? The. Yes, isn't it? No. It's not. She she submitted a declaration and she submitted it to the well to the district attorney's office. The district attorney's office has a bunch of documents. The welfare fraud investigation. She submitted two affidavits. Correct. She did. Weren't the A.L.J. findings about coercion, spousal abuse, et cetera. Excuse for not paying attached to at least one of those affidavits. In response to your question, I was saying she didn't attach it. But they weren't. They might have been attached. They were attached. They were in the court file. That's that's where we found and available to the people who made the prosecutive decision. Correct. It was given to that. It was given to the district attorney all along. So he had a copy. Tell me what the heart of your theory is. Is it that the welfare fraud investigator and her supervisor should have never forwarded these this information to prosecutive authority? No, no. OK. What's the heart of your heart? The heart of the case is this. When the when the hearing decision was achieved, administrative finality, which was 30 days after it was. And that's an issue. And that is an issue, isn't it? Whether it was final. No, no. There's two types of finality. And that's how these cases get. Your brother agrees with that. Yeah. OK. There's a judicial finality and administrative finality. And I think that's where things got muddled up a little bit. The. Now, I see. I interrupted. Not. And I apologize. Let me get it. Let me get a drink. Got to twist that cap around. There you go. I think the question I think the question on the table is under the facts that you've just described, what's the heart of your theory? What did this welfare fraud investigator and her supervisor do wrong that ought to merit 1983 action for damage? Right. They submitted the district attorney in order to have Miss Dean arrested, asked the Welfare Department to submit a declaration. A declaration in support of arrest. An arrest warrant. That declaration on his face page from the Welfare Department states that the Welfare Department believes this person willfully obtained funds by fraud and deceit. OK. What we're saying is, is that the Welfare Department couldn't make that declaration. The district attorney could ask for that kind of stuff. And the district attorney could certainly go on whatever its investigation is. But the Welfare Department, its position was solidified in that fair hearing decision. And all the people who work for the Welfare Department, its boss, its welfare fraud and all the DW's, et cetera, are bound by the administrative decision. Did the fraud investigator tell the prosecutor not to read the administrative findings? I don't know. Is that one of your allegations? No. So whether she put it there, her supervisor put it there, or some unknown person put it there, when this file arrived at the desk of the prosecutor, it had all of the information we've discussed. It had the welfare fraud investigator and the supervisor in the department saying these payments, which were obtained under phony names and the like, were fraudulently obtained. But there's also the administrative findings saying basically she was coerced into receiving at least some of it. That's correct. One item wasn't there, and that was a October 27th, the final recomputation that got you down from $12,000 to $2,500. That was not there. The district attorney didn't have that. He filed the complaint using a figure that was wrong, that was at $9,000, which according to the formula about how you do disregards, that would have indicated culpability. He didn't have that document, so when he did his arrest, the petition for the arrest, it had a $9,000 figure in it, which would have indicated culpability. And that is one of the things that we say is that that particular document wasn't given to the district attorney. If it was, he would have put the correct figure in. But the point of the matter is this, is that. The recomputation still came to an amount that was a felony, did it not? In other words, the $2,000 was still felonious, wasn't it? It's only felonious if the intent was to get it. But that wouldn't necessarily appear from the face of the document. That's something the DA may have to prove. No, it would appear from the face of the document because the document indicates the disregards, which can only be given if it's non-willful. I mean, that's the point. You can't have this particular mathematical formula if the person is guilty. You only have this formula that reduces it down to $2,500 for an innocent person. But what do we know about the $2,500? Pardon me? What do we know about the $2,500? If she failed to report without reason, any reason at all other than a felonious reason, the receipt of $2,500 extra money, is that not subject to prosecution? No. It's not? No. You have to have had to obtain that money willfully with the intent to defraud someone. She did obtain it willfully, although the rest of the money she obtained willfully was excusable because she was afraid of her boyfriend. But this one apparently wasn't. It's $2,500. No, I don't think that's true. Well, it might have been. The district attorney had to decide that, didn't he? Well, the district attorney could decide that. And, again, this comes back to the point where what we're saying is that the district attorney can try to prove whatever. We're just saying that the welfare officials were required to follow the dictates of that fair hearing. They didn't arrest her. No, but they signed a declaration saying. Saying that she had taken the money and she wasn't entitled to it and she took it knowingly and so forth. And that's wrong because. No, but actually all of that was right. She was just excused because of coercion. But that's the welfare department's position. They could not represent a different position. The welfare department's position, which was part of the fair hearing process, came to the conclusion. Suppose this case. Okay. When they sent this declaration, they sent also the ALJ's determination in the fair hearing and said, Mr. District Attorney, here's all the information we have. Frankly, we don't think this ALJ's determination stops us. You'll have to look at that yourself. They're still guilty of doing some constitutional violation. That's basically what they did do. If they did that, what more could they do to satisfy their requirements under the law? You mean they shouldn't ever have let the DA know about it? They should have stated that the welfare department's position for whom they work for is that there's no blame here. There's no crime being committed. That's what they should have said. Are these arguments taken down? Yeah. Well, you just said that they sent all the information they had and left it up to the DA to decide whether it was something to be prosecuted, and that is what happened in this case. And they took the position that the reason why they could do it is because the decision was not final for collateral estoppel purposes. So they took that position because they didn't even know they did what I suggested. That's what they've been arguing. They didn't put it to the DA and say, you decide. They just gave him all the information assuming he would decide. No, they said that the decision is not final for a year. We've got a window. That's what they're saying. And we're saying no. That's what they're saying now. No, no, they said that. No, I'm sorry, Your Honor. They said that then, that the decision is not final for a year. Therefore, let's go forward. And it has been clearly held. Pardon me? And it has been clearly held that they violated the Constitution when they said that. Not when they said that. But to say that is incorrect in terms of what their conduct can be. Why is that a constitutional violation, I think, is what Judge Hill is getting to. In other words, 1983 doesn't import into state law all of federal law. It has to be a constitutional violation. So why was it unconstitutional for the county not to consider the ALJ's finding as binding? Why were they stopped by that finding? They were stopped. What we're saying they are stopped from doing, what they're precluded from doing, was signing a declaration under penalty of perjury that, according to the Welfare Department, this woman had committed welfare fraud because the fair hearing decision of the Welfare Department held differently, and they are bound by that. Well, you could have won the criminal case. Pardon me? You're saying you could have won the criminal case. As soon as the judge saw it, he threw it out. All right. I mean, that's the thing. And so you did win that, and they lost. Right. But every time they assert a claim of violation of criminal law and lose, they haven't violated the United States Constitution, have they? That's true. Right. It's sort of like the old Chinese curse. May you have a lawsuit with a valid defense. That's what you had here, right? Well, I'm going to reserve a minute. All right. Mr. Gumpert, talk. May it please the Court, my name is Franklin Gumpert. I represent the county of Plumas, Elliott Smart, and Linda Patton. Mr. Gumpert. Yes. You know, there's an old saying in a lot of fields that sometimes you quit while you're ahead. I think I might. I think I might. I just want to clarify one other. Actually, my client, Mr. Smart, is here, and he said that in the last argument. I do want to just clarify one point. Sure. Elliott Smart, there is no evidence in the record that Elliott Smart participated in any way, shape, or form with the submission of any information to the district attorney, to the participation in the fair hearing, to the calculation of the overpayments, or to the adjustments after the ALJ decision. Clearly, there is no evidence of that. He is merely the head of the department, no more, no less. And under a plethora of cases, there's no liability just because he is a supervisor. He was just sort of hanging around a tort. That's the theory. That's the theory. And I really don't have much else. I think I understand where this Court is coming from. There really is a clear distinction that apparently the appellant has never understood, the distinction between administrative finality and the conclusive effect that it would have on the potential criminal prosecution by the prosecutor who was given that decision the very day it was submitted to Linda Patton. It was sent on to the DA the very day. This is not an act of judicial deception. All right. Thank you. The record actually, since we're focusing on whether or not a declaration that was submitted was contrary to what had become the administration decision, Mr. Smart did approve the declaration. That's his connection to it. He approved all that work. We submitted a case to the clerk just a week ago called Lomelli v. CDA. It deals with this very exact issue of what happens with judicial finality and collateral estoppel in a fair hearing sense, and does that affect the compliance of the people who are held by the fair hearing. And that's what this case is about, two different things. We're not trying to stop the prosecution. We're just saying the Welfare Department cannot take a position different than what it developed in its own administrative process, and that's what they did. All right. Thank you. The case just argued will be submitted.
judges: Hill, Tg Nelson, Hawkins